UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PATRICK LONGLEY, | : | CIVIL ACTION NO. |
| Plaintiff | : | 04-12548 (MLW) |
| | | |
| V. | : | |
| | | |
| BUCHANAN MARINE LP, | : | |
| Defendant | : | JANUARY 12, 2006 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS

Defendant, Buchanan Marine, LP (hereinafter "Buchanan Marine" or "the defendant"), hereby submits this Memorandum of Law in support of this Motion to Dismiss for lack of personal jurisdiction and Improper Venue.

**I.    INTRODUCTION**

Plaintiff Patrick Longley of Swansea, Massachusetts, filed a Complaint dated December 6, 2004 against defendant Buchanan Marine, a Delaware limited partnership doing business in New York.  According to the Complaint, Mr. Longley's claim arises from an incident which occurred on July 25, 2004 during the course of his employment with Buchanan Marine in the service of a barge known as the *B 18* and tugboat *Dory Barker* in the navigable waters of New York.

Mr. Longley has asserted causes of action for: negligence under the Jones Act, 46 U.S.C. 688, et seq. (Count One); general maritime law unseaworthiness (Count

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

12451.0015
HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Two); general maritime law maintenance and cure (Count Three); and intentional/ negligent failure to provide maintenance and cure (Count Four). Plaintiff served the Complaint on December 21, 2004, and thereafter, Buchanan Marine moved to dismiss for insufficient service of process, lack of personal jurisdiction, and *forum non conveniens*. The Honorable Mark L. Wolf, U.S.D.J., granted the motion based upon insufficient service of process and quashed the service of process, but provided the plaintiff with time to serve again. (Longley v. Buchanan Marine, CA-04-12548, September 15, 2005 transcript of hearing on motion to dismiss, p. 15, attached hereto as Exhibit A). However, Judge Wolf denied Buchanan Marine's motion as to whether the court had personal jurisdiction over Buchanan Marine to hear the case and allowed the plaintiff to conduct jurisdictional discovery to assist the court in determining whether it had personal jurisdiction. (Id.)

## II.    **FACTUAL BACKGROUND**

Buchanan Marine, LP is a limited partnership organized under the laws of the State of Delaware. The corporate office is located in New Haven, Connecticut and its principal place of business is in New York. (Affidavit of Jules Lloyd, ¶ 3, copy attached hereto as Exhibit B).[1] Buchanan Marine did not transact, solicit or engage in any business within the Commonwealth of Massachusetts in 2004, including on the date of the alleged incident, July 25, 2004. (Affidavit of Jules Lloyd, ¶ 4, Exhibit B; Affidavit of Ronald Combs, ¶ 12, attached hereto as Exhibit C; Defendant's Objections and Responses To Plaintiff's Interrogatories, #8, Exhibit D).

---

1/  The original Lloyd affidavit was filed by Buchanan Marine with the original January 7, 2005 Motion to Dismiss.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**Halloran
& Sage LLP**

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Buchanan Marine has offices and conducts marine operations in Connecticut, New York, and Virginia. (Affidavit of Ronald Combs, ¶ 2, Exhibit C). Buchanan Marine has not had its vessels in the waters of the Commonwealth of Massachusetts. (Affidavit of Ronald Combs, ¶ 8, Exhibit C; Defendant's Objections And Responses To Plaintiff's Interrogatories, #11, Exhibit D).

Buchanan Marine neither owns nor rents any real or personal property in the Commonwealth of Massachusetts. (Affidavit of Ronald Combs, ¶ 9, Exhibit C; Defendant's Objections And Responses To Plaintiff's Interrogatories, #17, Exhibit D). Buchanan Marine has not maintained any bank account within the Commonwealth of Massachusetts. (Affidavit of Ronald Combs, ¶ 10, Exhibit C; Defendant's Objections and Responses to Plaintiff's Interrogatories, #20, Exhibit D). Buchanan Marine has not filed corporate tax returns in the Commonwealth of Massachusetts. (Affidavit of Ronald Combs, ¶ 6, Exhibit C; Defendant's Objections and Responses To Plaintiff's Interrogatories, #9, Exhibit D). Buchanan Marine has neither applied for nor obtained a grant for tax exemption from the Commonwealth of Massachusetts. (Affidavit of Ronald Combs, ¶ 11, Exhibit C; Defendant's Objections And Responses To Plaintiff's Interrogatories, ¶ #21, Exhibit D).

Buchanan Marine employs over two hundred and ten (210) persons. (Affidavit of Ronald Combs, ¶ 3, Exhibit C). Buchanan Marine has employed and currently employs persons from the following twelve (12) states: Rhode Island, Connecticut, New York, Pennsylvania, New Jersey, Virginia, Florida, North Carolina, Maine, Missouri, Alabama, and Texas. (Id.). Since 2003, Buchanan Marine has employed three persons, other

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

than the plaintiff, who resided in the Commonwealth of Massachusetts. (Defendant's Objections and Responses To Plaintiff's Interrogatories, ¶ 2, attached hereto as Exhibit D).

Buchanan Marine has not solicited Massachusetts residents for employment. (Affidavit of Ronald Combs, ¶ 13, Exhibit C). Buchanan Marine has not advertised in Massachusetts. (Defendant's Objections And Responses To Plaintiff's Interrogatories, ##22-23, Exhibit D). In fact, the plaintiff, Patrick M. Longley, solicited Buchanan Marine at the defendant's office in Port Washington, New York, by fax and mail in September 2003 seeking employment with Buchanan Marine. (September 23, 2003 letter of Patrick M. Longley to Buchanan Marine LP, attached hereto as Exhibit E).

Buchanan has not employed an officer, agent, or employee in the Commonwealth of Massachusetts. (Affidavit of Ronald Combs, ¶ 4, Exhibit C; Defendant's Objections and Responses To Plaintiff's Interrogatories, #3, Exhibit D). Buchanan Marine has not provided any goods or services to any entities in the Commonwealth of Massachusetts. (Affidavit of Ronald Combs, ¶ 5, Exhibit C; Defendant's Objections and Responses To Plaintiff's Interrogatories, #7, Exhibit D). Buchanan Marine derives zero dollars from business in the Commonwealth of Massachusetts because it does not transact business there. (Affidavit of Ronald Combs, ¶ 7, Exhibit C; Defendant's Objections And Responses To Plaintiff's Interroga-tories, #10, Exhibit D).

At the time of the alleged incident, the barge, *B 18,* and the tug *Dory Barker*, were in navigable waters of the State of New York. (Affidavit of Jules Lloyd, Exhibit B).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Plaintiff Patrick Longley signed aboard the tug, *Dory Barker*, in Port Washington, New York a few days prior to July 25, 2004.  (Affidavit of Jules Lloyd, Exhibit B).  All of the crewmembers of the *Dory Barker*, except the plaintiff, are residents of New York. (Affidavit of Jules Lloyd, Exhibit B).

**III.**    **LEGAL ARGUMENT**

    **A.**    **The Court Should Dismiss This Matter For Lack Of Personal Jurisdiction Over The Defendant.**

In Intech, Inc. v. Triple "C" Marine Salvage, Inc., 444 Mass. 122, 125 (2005), the Supreme Judicial Court reiterated its long-standing jurisdictional threshold requirement that "[a] Massachusetts court may acquire personal jurisdiction over a nonresident 'when some basis for jurisdiction enumerated in the [long-arm] statute has been established.'" (quoting Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979)).  It is therefore manifest that the Massachusetts long arm statute, General Law c. 223A, § 3, "asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established.  [Consequently,] [a]lthough presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites."  Morrill v. Tong, 390 Mass. 120, 129 (1983).  Simply put, only when the "literal requirements of the statute are satisfied . . . must [it] be established that 'the exercise of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United State Constitution."  Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**Halloran & Sage LLP**

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

General Law c. 223A, § 3, provides, in relevant part, that "[a] [Massachusetts] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth."  Accordingly, "[f]or jurisdiction to exist under § 3 (a), the facts must satisfy two requirements – the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Itech, Inc. v. Triple "C" Marine Salvage, Inc., 444 Mass. at 126;  accord Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 712 (1st Cir. 1996). "The 'transacting any business clause' [in § 3] has been construed broadly. . . . Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally, the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." Tatro v. Manor Care, Inc., 416 Mass. 763, 767-68 (1994).  Significantly, "[a] plaintiff has the burden of establishing facts to show that the ground relied on under § 3 is present."  Itech, Inc. v. Triple "C" Marine Salvage, Inc., 444 Mass. at 125.

The facts in this case may constitute, at most, an isolated and minor transaction with a Massachusetts resident that is, in any event, insufficient to satisfy the Massachusetts long arm statute.  This is so because the plaintiff has not, and indeed simply cannot, adduce any facts that would permit the District Court to conclude that the defendant purposefully and successfully solicited business from residents of the Commonwealth.  Not only did Buchanan Marine not transact, solicit, or engage in any business within the Commonwealth of Massachusetts on or about July 25, 2004, the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

plaintiff, and not Buchanan Marine, is the one that solicited Buchanan Marine – in the

State of New York – seeking employment.  Indeed, the plaintiff deliberately contacted

Buchanan Marine by submitting his application for employment to the Buchanan office

in Port Washington, New York, and offered to perform his services outside of

Massachusetts.  Moreover, the plaintiff could not have been responding to any solici-

tations by Buchanan Marine because it did not solicit the plaintiff in particular or in

Massachusetts generally.  In placing a telephone call to the plaintiff in Massachusetts to

accept the offer of the plaintiff's employment on a Buchanan tug outside the state of

Massachusetts, Buchanan Marine was merely affirmatively responding to the plaintiff's

solicitations seeking employment.  Such a call, along with subsequent calls, to the

plaintiff concerning the plaintiff's out-of-state employment with Buchanan Marine was

therefore completely "void of any purposeful intent . . . to avail itself of the privilege of

conducting activities within [Massachusetts]."  Cf. Itech, Inc. v. Triple "C" Marine

Salvage, Inc., 444 Mass. 122, 127 (2005) (affirming that out-of-state seller's letters

relating to sale of marine engines received by resident buyer in Massachusetts was

insufficient contacts to assert jurisdiction under § 3(a)).

Several Massachusetts District Court decisions have concluded that "[t]he mere

recruitment of [Massachusetts residents] to perform tasks outside the state is not

enough to establish jurisdiction over the defendant."  Smith v. Marine Transport Lines,

Inc., 1988 WL 92467 (D.Mass1988);  See also Davis v. P.M. Video, Inc., 532 F.Supp.

1012 (D.Mass.1982).  Yet, even the facts contained in this line of cases are

distinguishable from the present case because Buchanan Marine did not solicit or

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

actively recruit the plaintiff or any other Massachusetts residents for out-of-state

employment.  Rather, the plaintiff solicited Buchanan Marine in New York.

Nevertheless, a powerful rationale buttresses the District Court's conclusions in

Smith v. Marine Transport Lines, Inc., 1988 WL 92467 (D.Mass.1988) and Davis v.

Video, Inc., 532 F.Supp. 1012 (D.Mass.1982).  If a potential out-of-state employer were

deemed to have transacted business within the meaning of General Law c. 223A, § 3(a)

every time such an employer affirmatively responded to a Massachusetts resident's

solicitation for employment, the absurd result would be that every out-of-state employer

would be faced with being haled into Massachusetts courts even though the employer

did not actively solicit business from Massachusetts residents or know that it would deal

directly with the potential employee in Massachusetts.  Accordingly, just as out-of-state

purchasers would be discouraged from dealing with potential resident sellers for fear of

having to engage in litigation in distant courts, so too would out-of-state employers be

discouraged from employing potential resident employees.  Cf. New Hampshire

Insurance Guaranty Association v. Markem Corporation, 424 Mass. 344, 350 (1997)

(declining to condone as basis for personal jurisdiction fact that some administration of

business occurred in Massachusetts despite fact that most business was conducted in

New Hampshire to avoid implication that under § 3 (a) all foreign purchasers could be

rendered subject to long arm jurisdiction.).

Any attempt to assert that the facts in this case neatly comport with the facts in

Pike v. Clinton Fishpacking, Inc., 143 F.Supp.2d 162 (D.Mass.2001) must fail because,

unlike Pike, there is simply no evidence that can support the conclusion that Buchanan

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Marine's decision to employ the plaintiff formed part of an "overall purposeful solicitation of employees from Massachusetts." <u>Pike v. Clinton Fishpacking, Inc.</u>, 143 F.Supp.2d 162, 167-68 (D.Mass.2001).  In <u>Pike</u>, the defendant out-of-state employer actively solicited and recruited Massachusetts residents for employment in Alaska through sustained and substantial contacts with a New Bedford based recruiting group called "Eastern Fisheries." <u>Pike</u> at 168.  The critical distinguishing fact here is that, not only did Buchanan Marine not solicit the plaintiff, the plaintiff solicited Buchanan Marine in New York.

Furthermore, unlike <u>Pike</u>, where between 50% to 90% of the defendants' crew had been actively recruited from Massachusetts, here, only three employees, out of approximately 210 total employees, resided in Massachusetts during the time of the alleged incident.  Critically, there is no evidence that even these three Massachusetts residents were solicited and recruited by Buchanan Marine.  Rather, because of the intermittent and variable nature of their line of work, Massachusetts just happens to be where three of the employees resided.  Thus, the putative "transactions of business" with Massachusetts residents are plainly fortuitous and not deliberate in that they are dependent on the transience of potential employees rather than on the deliberate actions of Buchanan Marine to solicit and recruit employees from Massachusetts.  This is a far cry from the twenty-year relationship between the out-of-state employer and the New Bedford-based Eastern Fisheries in <u>Pike</u> that was intentionally "designed to bring Massachusetts residents to Alaska." <u>Pike</u> at 170.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**Halloran
& Sage LLP**

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Profoundly diverse facts also distinguish <u>Tatro v. Manor Care, Inc.</u>, 416 Mass. 763 (1994) from the instant case.  In <u>Tatro</u>, a California hotel actively solicited and obtained meeting and convention business from at least ten Massachusetts businesses, and maintained contact with them by telephone and mail.  <u>Tatro v. Manor Care, Inc.</u>, 416 Mass. 763, 768 (1994).  In the context of the defendant's "overall purposeful solicitation of hotel business from residents of Massachusetts," the Supreme Judicial Court in <u>Tatro</u> concluded that the defendant's acceptance of the plaintiff's room reservation was sufficient to satisfy the transacting of business requirement of § 3 (a). <u>Tatro</u> at 768.

Here, Buchanan Marine did not solicit in Massachusetts for employment.  Any telephone or mail contacts with employees residing in Massachusetts, including the plaintiff, were not made for purposes of solicitation, but rather to apprise employees of, among other things, their work schedules and earnings.

Buchanan Marine should not be subject to litigation in Massachusetts when, as here, it merely affirmatively responded to a Massachusetts resident's solicitation for employment with an out-of-state employer for work outside of Massachusetts.  To hold otherwise would instill a well-founded fear in out-of-state employers of having to engage in litigation in distant courts for simply deciding to accept a Massachusetts resident's solicitation for employment outside Massachusetts.  Accordingly, under the circum-stances of this case, Buchanan Marine's decision to respond to the plaintiff and offer him a job outside of Massachusetts should not constitute a "transaction of business"

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

which would subject the defendant to jurisdiction under Massachusetts' long-arm statute.

In addition to the lack of personal jurisdiction under state law, the maintenance of this action in this Court would "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 66 S.Ct. 154, 158 (1945).  Maintenance of this action would not comport with the Due Process Clause of the United States Constitution.  "The First Circuit has explained that compliance with the federal constitutional standard involves a somewhat more extensive showing than the long-arm statute.  'That showing has three aspects:  First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.'" Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (citing United Electrical, Radio & Machine Workers of America, 960 F.2d at 1089).

A consideration of fundamental importance is whether the plaintiff's cause of action arises out of or is related to the defendant's contacts with the forum state.  The First Circuit uses a proximate cause standard when conducting a relatedness inquiry.  "We think the proximate cause standard better comports with the relatedness inquiry because it so easily correlates to forseeability, a significant component of the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

jurisdictional inquiry." <u>Nowak v. Tak How Investments, Ltd.</u>, 94 F.3d 708, 715 (1st Cir. 1996).

In <u>Nowak v. Tak How Investments, Ltd.</u>, 94 F.3d 708, 715 (1st Cir. 1996), the First Circuit determined that, "[w]hen a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result." <u>Nowak</u> at 715.  Further, the <u>Nowak</u> court concluded that, "[i]f the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage." <u>Nowak</u> at 715-16.

Here, the jurisdictional facts demonstrate that Buchanan Marine did not target Massachusetts residents in an ongoing effort to further a business relationship and did not seek to establish a relationship with the plaintiff.  Indeed, the facts show just the opposite.  The plaintiff sought to establish a relationship with Buchanan Marine by submitting his resume to its New York office for employment outside Massachusetts. The facts in the <u>Nowak</u> case are not analogous to those in the instant case.  In short, even under a "relaxed" proximate cause standard, it is unreasonable to presume that, when Buchanan Marine affirmatively responded to the plaintiff's solicitation for employ-ment, it could foresee that its response would form the jurisdictional predicate to be hauled into a Massachusetts court if the plaintiff were injured outside Massachusetts during the course of his employment.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

The next issue is whether Buchanan Marine's contacts with Massachusetts constitute purposeful availment.  "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state.'" Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996). "[M]inimum contacts must have a basis in 'some act by which the defendant purpose-fully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2183 (1985).  "Our two focal points are voluntariness and forseeability. . . . The defendant's contacts with the forum state must be voluntary-that is, not based on the unilateral actions of another party or a third person. . . .  In addition, the defendant's contacts with the forum state must be such that he should reasonably anticipate being haled into court there." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996).

In Nowak, the First Circuit determined that an unprompted correspondence with a Massachusetts resident by a Hong Kong hotel minimally satisfied the purposeful availment requirement. Nowak, at 717.  Here, the plaintiff made unprompted corres-pondence with the defendant, in which case, under the standard propounded in Nowak, the plaintiff purposefully availed himself of the laws of New York.  Thus, Buchanan Marine was prompted to respond to the plaintiff by the plaintiff's application for employment.  The response to the plaintiff's solicitations was, by definition, fortuitous in that Buchanan Marine did not engage in active solicitation of Massachusetts residents and was merely responding to the plaintiff's active solicitation.  This fortuity is

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

punctuated by the fact that Buchanan Marine did not advertise in Massachusetts and did not derive any economic benefits from Massachusetts.

Regarding the forseeability element of the purposeful availment inquiry, a Massachusetts District Court has stated that this analysis must determine whether the defendant's "in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendants' involuntary presence before the state's court's foreseeable." Pike v. Clinton Fishpacking, Inc., 143 F.Supp.2d 162, 169-70 (D.Mass. 2001). Unlike the Pike case, the defendant in this case did not seek employees from Massachusetts. The absence of such contacts, which indicates that Buchanan Marine did not engage in any campaign to recruit Massachusetts residents to Connecticut, New York or Virginia, renders unforeseeable the possibility of being haled into a Massachusetts court for merely affirmatively responding to the solicitation of a Massachusetts resident.

"Personal jurisdiction may only be exercised if it comports with traditional notions of "fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. at 317, 66 S.Ct. at 160. "Out of this requirement, courts have developed a series of factors that bear on the fairness of subjecting a nonresident to a foreign tribunal. . . . These 'Gestalt factors' are as follows: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all sovereigns in

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

promoting substantive social policies." <u>Nowak v. Tak How Investment, Ltd.</u>, 94 F.3d 708, 717 (1st Cir. 1996).

"The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close. . . .  In such case, the gestalt factors may tip the constitutional balance." <u>Nowak</u>, at 717. Significantly, the First Circuit has adopted a "sliding scale" approach. '[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction . . . . The reverse is equally true:  a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness." <u>Nowak</u>, at 717.

Here, regarding the relatedness and the purposeful availment prongs of the constitutional "minimum contacts" analysis, the jurisdictional facts under consideration reveal that Buchanan Marine did not solicit Massachusetts residents for employment and did not advertise in Massachusetts.  These facts constitute a "weak" showing. Consequently, Buchanan Marine need only make a limited showing of unreasonable-ness to defeat jurisdiction.

Here, there are no witnesses in Massachusetts to the alleged injury.  The defendant is a Delaware limited partnership with offices in Connecticut, New York, and Virginia.  The defendant does not transact business or operate in Massachusetts.  The event giving rise to this action occurred in the navigable waters of New York and the plaintiff boarded the vessel in New York.  The defendant has not and does not operate in Massachusetts waters.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In sum, Buchanan Marine did not purposefully avail itself of the protections or benefits of Massachusetts law and it would be unfair to impose jurisdiction on it under the circumstances of this case. There are simply no contacts with Massachusetts which would support an exercise of general or specific jurisdiction under the United States Constitution. Accordingly, the Court should dismiss this matter for lack of personal jurisdiction

**B.**     **The Court Should Dismiss This Matter Based Upon Improper Venue**

The plaintiff's Complaint contains no allegations alleging or establishing that venue is appropriate in the United States District Court in Massachusetts. First, the defendant does not have a place of business or corporate residence in Massachusetts such that venue under the Jones Act is not appropriate in the District of Massachusetts. The Jones Act provides that, "[J]urisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." See 46 U.S.C. § 688a. Based upon this provision, the defendant contends that because it does not maintain a corporate residence in Massachusetts and it has no office, let alone a principal office, in Massachusetts, venue with respect to plaintiff's Jones Act claims would be improper in the District of Massachusetts.

Secondly, the federal question venue provision, 28 U.S.C. Section 1391(b), would not provide for venue in Massachusetts. Section 1391(b) provides for venue in a judicial district where the defendant resides or where, "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." As noted above, Buchanan Marine cannot be

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

considered as residing in this district because it does not transact business in Massachusetts.  Furthermore, no part of the event giving rise to this action – and certainly not a "substantial" part – occurred in Massachusetts and the vessels involved in the event are located in New York.

Third, general venue considerations weigh heavily in favor of litigating this matter in an alternative forum (e.g., New York or Connecticut) in light of the fact that the incident occurred in the navigable waters of New York, the vessels involved are located in New York, it would be impossible to subpoena New York witnesses to Boston, Massachusetts and the documents concerning the plaintiff's employment and the maintenance of the vessels are located in Connecticut and New York.

The decision to dismiss a case or transfer venue is in the trial judge's discretion. See Coady v. Ashcraft and Gerel, 223 F.3d 1, 11 (1st Cir. 2000).  "[T]he defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum."  Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 719 (1st Cir. 1996).  When an alternative forum exists, the district court should then determine whether transfer to another venue is more convenient and avoids serious unfairness.  Mercier v. Sheraton International, Inc., 981 F.2d 1345, 1354 (1st Cir. 1992).

Section 1404(a) of Title 28 states:  "For the convenience of the parties and witnesses, in the interest justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 108 S.Ct. 2239, 2244 (1988) (quoting <u>VanDusen v. Barrack</u>, 84 S.Ct. 805, 812 (1964)).  The court must weigh the relative convenience of the chosen forum for each of the parties and take into consideration access of the parties to sources of proof, the availability of compulsory process for attendance of witnesses and other practical problems that might impede an expeditious and inexpensive disposition of the matter.  <u>Gulf Oil Corp. v. Gilbert</u>, 67 S.Ct. 839, 843 (1947).  In weighing these factors, the court must also consider that the plaintiff's choice of forum is of "paramount consideration" and "should not be lightly disturbed."  <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910 (1971).  However, plaintiff's choice of forum is deserving of less weight where none of the operative facts of the action occurred in the forum selected by the plaintiff and should only be given equal consideration with the other factors set forth in § 1404.  <u>Brant Point Corporation v. Poetzsch</u>, 671 F.Supp. 2, 5 (D.Mass. 1987)  <u>Liberty Mutual Insurance Co. v. Gardere & Wynne</u>, 1994 WL 707133 (D.Mass); <u>Culbertson v. Ford Motor Co., Inc.</u>, 531 F.Supp. 406, 407 (E.D.Pa.1982).

The entire crew of the *Dory Barker*, except the plaintiff, resides in the State of New York.  In addition, in light of the fact that the plaintiff's Jones Act and maritime claims center on the question of the "seaworthiness" of the subject vessels, a visit to the vessel, or at the very least, discovery concerning the condition of the vessel, may be necessary – weighing further in favor of dismissing or transferring the case so it can be adjudicated in a more convenient and fair forum.  Certainly, the testimony of the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

crewmembers concerning what happened at the time of the accident and the condition of the *Dory Barker* at the time of the accident will be required. All records concerning maintenance and care of the subject vessel will be located in Connecticut and New York – none of these records are located in Massachusetts. Although the plaintiff's treating physician may reside in Massachusetts, the plaintiff could arrange for the physician to testify in another District Court – whereas the defendant would be unable to summon out of state witnesses to a trial in Massachusetts. There is no question that an adequate alternative forum exists because the plaintiff could refile in a federal court in New York or Connecticut; or the matter could be transferred to one of these jurisdictions, pursuant to 28 U.S.C. § 1404.

In summary, because this incident occurred in the navigable waters of New York, the vessels are located in New York and the liability phase of the trial would involve the testimony of witnesses who have no connection to the Commonwealth of Massachusetts and involve a corporate defendant which does not do business in Massachusetts, venue in Massachusetts would is not appropriate. Accordingly, the matter should be dismissed for *forum non conveniens*.

## IV.    **CONCLUSION**

For the foregoing reasons, the District Court should dismiss the plaintiff's Complaint for lack of personal jurisdiction and *forum non conveniens*.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**RESPECTFULLY SUBMITTED FOR THE DEFENDANT, BUCHANAN MARINE LP, BY ITS ATTORNEY**


By_____/s/_____

Kevin M. Roche, BBO 551190
HALLORAN & SAGE LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 522-6103
Email: roche@halloran-sage.com


## CERTIFICATION

This is to certify that on this 12th day of January 2006, the foregoing was e-filed to:

Carolyn M. Latti, Esquire
David F. Anderson, Esquire
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109


_____/s/_____
Kevin M. Roche

776265_1.DOC

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

# EXHIBIT A

091505c.txt

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


PATRICK LONGLEY                  )  CA 04-12548
                                 )  Boston, MA
v.                               )  September 15, 2005
                                 )
BUCHANAN MARINE                  )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE
MOTION HEARING


APPEARANCES:

KAREN LATTI, ATTORNEY
for Plaintiff

Halloran & Sage
by KEVIN ROCHE, ESQ.,
for Defendant


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577

◻

2

1            THE CLERK:  This is Civil Action Number 04-12548,

2     Patrick Longley versus Buchanan Marine.

3            Court is in session.  You may be seated.

4            THE COURT:  Good afternoon.  Would counsel please

5     identify themselves for the court and for the record.

6            MS. LATTI:   Good afternoon, your Honor.  Karen

Page 1

091505c.txt
7    Latti for Patrick Longley.

8         MR. ROCHE:  Your Honor, Kevin Roche, from

9    Halloran & Sage for the defendant, Buchanan Marine.

10        MR. FIX:  Your Honor, my name is Karl Fix.  I'm

11   Mr. Roche's partner.  I don't have an appearance in the

12   file.  I'd simply like to sit at counsel table if your

13   Honor will approve of that.

14        THE COURT:  That's okay.

15        We're here today primarily in connection with the

16   defendant's motion to dismiss or for a change of venue.

17        I apologize for the delay in starting.  As you

18   saw, an evidentiary hearing that I didn't anticipate, took

19   longer than I understood it might.

20        It might be helpful for me to give you my

21   tentative views, and I'd emphasize tentative.

22        The burden of proof to establish both proper

23   service of process and personal jurisdiction is on the

24   plaintiff and, at the moment, I doubt that there's been an

25   adequate showing that a person authorized to accept

3

1    service was served.

2         Mr. Lloyd, who I think is a safety director,

3    received the complaint.  He says he's not authorized to

4    accept service.  The plaintiff's memorandum argues that

5    the process server was told by Lloyd that he was

6    authorized.  But that's not in an affidavit.  And the

7    statute enumerates particular people who have to be served

8    for me to have jurisdiction over the case.

9         I know there are a number of factors I can look

10   at, and one of them is whether the complaint got to the

11   right people.  But I don't think I'm permitted to
                          Page 2

091505c.txt

12    essentially infer, because they appeared for this limited

13    purpose, that it got to the right place.

14            But there may be material disputed facts.  There

15    maybe should be discovery on, theoretically, on whether

16    service of process is appropriate.

17            If there isn't, though, if I'm not persuaded that

18    there was proper service of process, ordinarily, I would

19    just quash the return of service, whatever I'm quashing,

20    and the plaintiff -- I wouldn't ordinarily dismiss the

21    case, but there may be something extraordinary here.

22            The reason I wouldn't dismiss the case, if, for

23    example, there were several defendants, and one was

24    improperly served, clearly, the court has jurisdiction, it

25    just hasn't been invoked properly.

4

1            But, here, from what I've read, there appears to

2    be a serious question of personal jurisdiction.  And maybe

3    I've got to get to the point where I write and publish

4    more rather than deciding things orally.

5            To a certain extent, the plaintiff relies on

6    Judge Lindsay's analysis, which -- in the Pike case --

7    which in turn draws on some language from the First

8    Circuit that basically says, if you satisfy the

9    requirements of due process, you also satisfy the

10    requirements of the Massachusetts Long Arm Statute.  He's

11    right.  The First Circuit said that.

12            But as I found in a patent case several weeks

13    ago, both the First Circuit and, more especially, the

14    Massachusetts SJC have said something quite different

15    also.  And I think it's what the SJC said that's most

Page 3

091505c.txt
16    significant.

17          For example, there's a case called Morrill versus

18    Tong, 390 Mass 120 at 129.  And that is, in Massachusetts,

19    the Long Arm Statute asserts jurisdiction over the person

20    to the constitutional limit only when some basis for

21    jurisdiction enumerated in the statute has been

22    established.

23          They said something similar in Tatro (sic), 416

24    Mass 763 at 767.

25          And, in fact, the First Circuit picked up on this

5

1    in cases earlier than the one Judge Lindsay relied on,

2    including Noack, page 711.

3          I need to know more about what the contacts were

4    with Massachusetts.  I know Judge Mazone and Judge

5    McNaught decided those Smith and Davis cases that said

6    just hiring somebody in Massachusetts is not enough.  I

7    would have thought it might be enough.

8          But it strikes me as a serious question.  And to

9    get jurisdictional discovery, you have to make some

10    colorable claim that you'll discover facts which would be

11    sufficient to establish jurisdiction.  And maybe that's

12    been done here.  But I'm thinking practically as well as

13    legally.

14          If I were to find that there hasn't been yet

15    proper service or process, I might, if I had to, consider

16    actually dismissing the case without prejudice so the

17    plaintiff would be at square one and say, do we really

18    want to bring this again in Massachusetts where we're

19    going to have to do some number of months of

20    jurisdictional discovery and argument?  Or can and should

Page 4

091505c.txt

    21    we just go to New York or Connecticut, which I think the
    22    defendants claim would be proper venues and, you know,
    23    really get to the merits of this?
    24           That's as transparent as I can be.  And I
    25    emphasize, this is tentative.  I've been doing a lot of

                                                                  6

    1    other things.  And I can really be educated by the
    2    argument.  But it's unfortunate that there's this kind of
    3    preliminary scrimmaging.
    4           I know the plaintiff prefers to be here, but is
    5    it really important for some reason?
    6           MS. LATTI:   Would you like me to address that
    7    issue first?
    8           THE COURT:  Yeah, and then we'll got the merits.
    9           MS. LATTI:   Practically, I would say it goes
    10   either way.  You have the plaintiff who lives in
    11   Massachusetts.  You have medical witnesses in
    12   Massachusetts.  You have all, you know, the defendant goes
    13   at length, says all the documents are in Connecticut.  You
    14   know, that really doesn't make it a difference.  It goes
    15   either way, because if I need to do a keeper of the
    16   records for the doctors for the records, it's there, the
    17   same as is the case was in New York.  If I'm in New York,
    18   I'm going to be at a loss, because I can't get the records
    19   that way.  My doctors are here.  He lives in
    20   Massachusetts.
    21           I will agree that there are no witnesses in
    22   Massachusetts.  From my knowledge, I know one of the
    23   witnesses in Connecticut, and some are in New York.
    24   whether they're all within the subpoena power of the

                             Page 5

091505c.txt

25    Southern District of New York, I don't even know that, so

7

1    I can't even guarantee that they're in the subpoena power.
2            So, logistically, practically, I think it goes
3    either way.  I don't think it favors one or the other.
4    But I think under the law, the defendant has to prove that
5    it's onerous.  And it's not.
6            THE COURT:  I wasn't so much asking that
7    question.
8            MS. LATTI:  Okay.
9            THE COURT:  Because the way the law works, as I
10   understand it, and I had to get back into this last month,
11   unless I have personal jurisdiction, I can't transfer the
12   case.  So as attractive as the idea of saying, well, I
13   might or might not have jurisdiction, but New York
14   definitely does, I'll send it to New York, that's not one
15   of the options.  I was just pretty much asking, you know,
16   if I say you didn't serve this quite right, but I know you
17   can, so that's going to take a month.  And until the case
18   has been properly served, I don't think I can decide
19   whether to give you jurisdictional discovery or not
20   because I don't have that legitimate power.  I don't
21   really have the case in front of me.
22           But then let's say you've served it, and you've
23   persuaded me you should get jurisdictional discovery, you
24   know, that's going to take a number of months.  And then
25   we're going to have a renewed motion to dismiss.  You

8

1    know, we'll be here a year from now trying to decide
2    whether you can be here or not.
                    Page 6

091505c.txt

```
 3              Do you really want to run that risk?
 4         MS. LATTI:   Yes, because I've been in the
 5    Southern District of New York, and it can take up to three
 6    years there to get a case heard.  So I still think I'm
 7    better off down in Massachusetts than I am in both the
 8    Southern or Eastern District of New York.  And that's just
 9    being straight-forward on the court's schedules.
10              I will say in regard to the service, I agree with
11    everything you said.  The only thing I would say is that
12    the individual who was served --
13         THE COURT:   Mr. Lloyd.
14         MS. LATTI:   Mr. Lloyd, correct, he is also the
15    individual who signed the affidavit for the company on the
16    motion to dismiss.  So, on one hand, they're arguing he
17    doesn't have the authority to accept service or process
18    but, on the other hand, he can sign an affidavit on a
19    motion to dismiss and discuss the entire context of the
20    company and every single business they do, but not accept
21    service.  So I think that's a huge contradiction that
22    hurts them.
23              And, so, in reality, I don't think the service of
24    process is such an issue.  And I would say, your Honor,
25    you can look at the case law and say he really is an
```

                                                               9

```
 1    agent.  If he's making that affidavit, he's an agent.
 2         THE COURT:   But doesn't he have to fit one of the
 3    precise categories under the Massachusetts statute?
 4         MS. LATTI:   My understanding is section 49,
 5    chapter 156D, says, secretary, agent, or other officer in
 6    charge of its business or, if not, such officer as found
```

                              Page 7

091505c.txt
```
 7   with accounting upon any member of the corporation.  And

 8   then there is case law that I cite in my brief on page 3,

 9   who stands in a position -- I'm just reading down -- to

10   render it fair, reasonable, and to imply authority.

11          I would just say he has the authority.  If he's

12   doing the affidavit for the motion to dismiss, he has the

13   authority to accept service.

14          You're right, your Honor, I can always correct

15   service in regards to that, and I would be more than

16   willing to do it and, usually, it is something that is

17   worked out between counsel, so I don't have a problem with

18   it.

19          THE COURT:  And I would really be encouraging

20   working it out if I didn't perceive a meaningful issue on

21   a personal jurisdiction.

22          MS. LATTI:   Right.

23          THE COURT:  You're right, because I know it's

24   usually worked out.

25          MS. LATTI:   Yes.
```

10

```
 1          THE COURT:  That's why none of us is really

 2   familiar with this.

 3          MS. LATTI:   When you hear it, you're like, okay,

 4   now I have to go research and know what the law is on that

 5   because it is something that's worked out.

 6          But in regards to practicality, yes,

 7   practicality, we would like to have it in Massachusetts

 8   rather than New York.  And I would say the biggest thing

 9   is in the docket in New York and that I'm better off being

10   in Massachusetts and for convenience sake.

11          THE COURT:   What about the service of process
```
Page 8

091505c.txt

12    issue, Mr. Roche?

13            MR. ROCHE:   Your Honor, I think that the reason

14    that we have the affidavit of that gentleman is because

15    he's the one who would have to sign the affidavit to say

16    he was not someone who could accept service.  There's no

17    other reason for that.  I don't think that's a good enough

18    argument to rebut that he is not a proper agent for

19    service.

20            Secondly, there's no affidavit from anyone, even

21    the serving Marshal or sheriff that says anything to the

22    opposite.

23            So there's nothing to rebut what's stated in the

24    affidavit itself.

25            THE COURT:   Let's go on.  Let's say I am not

                                                                11

1     persuaded that service was proper.  Then I'd have two

2     options.  I can quash the return of service, I believe, or

3     I can dismiss the case without prejudice.  And you

4     advocate that I dismiss the case without -- well, what do

5     you advocate?

6             MR. ROCHE:   Your Honor, I would request that you

7     dismiss the case without prejudice, that it be re-served.

8             THE COURT:   Well, it would have to be re-served

9     in any event.

10            MR. ROCHE:   Correct.

11            MS. LATTI:   Your Honor --

12            THE COURT:   No, the question is why.  In other

13    words, why should I exercise, you know, that option?

14            MR. ROCHE:   Your Honor, I mean, that's basically

15    our third argument.  There are some serious jurisdictional

                          Page 9

091505c.txt
16    questions that need to be answered.

17          In terms of maybe if the case is dismissed, and

18    you have suggested to us what your finding might be with

19    respect to the jurisdictional issues, the parties can work

20    it out that it will be brought in either Connecticut or

21    New York under those circumstances.

22          THE COURT:  Well, you can -- well, I'm not going

23    to decide whether I have personal jurisdiction if there

24    hasn't been adequate service of process.  Because you're

25    not properly before me.  And it wasn't the third argument

12

1     in your brief.  And, logically, it should be.  But why

2     should I dismiss for lack of personal jurisdiction?

3           MR. ROCHE:  Because there has been proper

4     service, your Honor.

5           THE COURT:  Putting that aside.  I thought you

6     were saying -- let's say they've served you properly,

7     either now or next month.  Your next argument is there's

8     no personal jurisdiction.  And I assume you're arguing

9     that they're not entitled to jurisdictional discovery,

10    right?

11          MR. ROCHE:  Correct.

12          THE COURT:  Because even what they're alleging

13    would be insufficient to create jurisdiction.

14          MR. ROCHE:  Correct.

15          THE COURT:  And what do they allege, remind me,

16    occurred in Massachusetts?  He was recruited to --

17          MR. ROCHE:  I don't think they alleged he was

18    recruited in Massachusetts, but that he received certain

19    mailings at his home, and certain telephone calls were

20    made to his home.  His billing or paycheck was sent to his

091505c.txt

```
21    home.  Things that would just be normal and wouldn't
22    necessarily give personal jurisdiction to the court.
23              THE COURT:  Why wouldn't it?  And I think their
24    argument is this arises out of a transaction of business
25    in Massachusetts.
```

13

```
 1              Ms. Latti, is that the argument?
 2              MS. LATTI:  Yes, your Honor, he was actually
 3    hired in Massachusetts.  The defendant's employee, Mr.
 4    Habb (sic), called up the plaintiff at his home in
 5    Massachusetts, offered a job of his employment, and he
 6    accepted it.  Over the next two-year period, he repeatedly
 7    got phone calls from the company once a month when he was
 8    home, because he would be a week on, a week off.  He would
 9    get phone calls saying, where's this, what's that, you
10    know, questions about things on a boat.  He also would get
11    questions, can you work overtime, can you work that time?
12    So it was continuous contact over a two-year period.  The
13    initial one was he hired him in Mass.
14              THE COURT:  And what happened to him on the boat?
15              MS. LATTI:  He was injured.  It was a tug and
16    barge outfit.  He was climbing over a wall of the barge,
17    slipped, broke his foot, wacked it against a cover on the
18    boat, broke his foot, left the vessel, sought treatment.
19    Three days later, he was walking down the stairs, had a
20    big boot on his foot, falls down the stairs and then tears
21    the meniscus in his knee.  So it's a two-part injury.
22              He was out for about six months during that time.
23    He's currently back at work.  It's for a closed-end
24    period, back working as captain onboard a ferry.
```

Page 11

091505c.txt
25            THE COURT:  He is?

14

1            MS. LATTI:  Yes.

2            THE COURT:  That's good.  And what are his

3       damages?

4            MS. LATTI:  It would be his lost wages for that

5       time period.  He has also impairment to earning capacity.

6       He's not making the money doing the ferry from Block

7       Island right now that he was through his company.

8            THE COURT:  About how much do you estimate his

9       damages are?

10           MS. LATTI:  Lost wages, probably about 60,

11      70,000 or more for the lost wages, and it depends how far

12      I go from impairment to earning capacity into the future.

13      That will level out at some point.  And then in regards to

14      his pain and suffering.  And there are unpaid medical

15      bills.  There's a claim for failure to pay maintenance and

16      willful and intentional failure to pay maintenance and

17      care.

18           THE COURT:  What would you like to say further

19      about personal jurisdiction?

20           MR. ROCHE:  Your Honor, this did not occur in

21      Massachusetts navigable waters; it occurred in New York

22      navigable waters.  The only contact with the state were

23      telephone calls to the plaintiff.  The other nine members

24      of the vessel were all from New York.  The vessel was a

25      New York vessel that wasn't even owned by Buchanan Marine,

15

1       nor was the barge that they were operating with at that

2       time.
                        Page 12

091505c.txt

    3              So the only contact that Buchanan Marine has with
    4         New York with respect to this case is telephone calls --
    5              THE COURT:  You mean to Massachusetts.
    6              MR. ROCHE:  To Massachusetts, would be telephone
    7         calls and sending Mr. Longley his paycheck.
    8              THE COURT:  And why isn't that enough to cause
    9         this to arise out of a transaction of business in
   10         Massachusetts?
   11              MR. ROCHE:  I don't think the cases suggest that
   12         that's enough.  I think --
   13              THE COURT:  Doesn't Judge Lindsay's case suggest
   14         that's enough?
   15              MR. ROCHE:  I don't think it does, your Honor,
   16         because, in the Pike case, the defendant used someone to
   17         recruit people from Massachusetts on an ongoing basis and
   18         had in fact hired several individuals from Massachusetts
   19         to work for that company in the same time frame.
   20              I think the case says the defendant also
   21         purchased gears and supplies from Massachusetts, solicited
   22         employees in Massachusetts, including the plaintiff, and
   23         serviced their vessels in Massachusetts.  None of that has
   24         been alleged here and, certainly, it didn't happen here,
   25         your Honor.

                                                                   16

    1              MS. LATTI:  Your Honor, in regard to the Pike
    2         case, when the court says in the Pike case, and Judge
    3         Lindsay talks about buying equipment, it's for the time
    4         period, I believe, prior to the accident.
    5              It is important, which is extremely similar to
    6         Pike, the defendant just pointed out that they've hired
                              Page 13

091505c.txt
```
 7    someone, and they hired -- it was a local guy down at the
 8    fisheries in New Bedford who the guy in Alaska calls and
 9    says, do you know anyone?  Well, they hired someone.  In
10    this case, we have someone better.  We have someone from
11    the defendant's own company hiring Mr. Longley in
12    Massachusetts via a telephone call.  So it's a stronger
13    contact than the Pike case.  And the Pike case was just
14    that one initial contact of the phone call.  Him hiring.
15    He goes out to Alaska.  He gets hurt.
16               We then, after the initial phone call, the
17    hiring, have a period over two years of phone calls
18    regarding his employment, of sending mail, sending
19    letters, and all that.  And that's what gives rise to
20    further contacts with Massachusetts.
21               I think the initial phone call establishes
22    jurisdiction and the continuous contacts after that.
23               THE COURT:  Do you need any discovery to -- if I
24    gave you discovery on this personal jurisdiction issue,
25    what discovery would you want to take?
```

17

```
 1               MS. LATTI:   I've had this issue come up in other
 2    cases, so I have a standard set of interrogatories,
 3    request for production of documents, lists for contacts
 4    with Massachusetts from, you know, if they did, and I
 5    don't know, I can't find out on my own, with regards to
 6    purchase equipment, whether the vessels have been up
 7    there, employees that they've hired.  I know of at least
 8    two other employees from my client that work for the
 9    company.  So it would focus on all the contacts they have
10    from other employees in Massachusetts, any revenue they
11    have from Massachusetts, whether they do business with
```
                              Page 14

091505c.txt

12    other marine companies in Massachusetts.  And that's

13    really what it would look for.  And then usually I do a

14    30(b)(6) just on the issue of jurisdiction.

15            THE COURT:  How much time would you need to do

16    that discovery?

17            MS. LATTI:   I would say in the next month, I

18    mean, if we could get it done.  The problem is I have a

19    trial that's going to take the whole month of November.

20            THE COURT:  We can hammer out the schedule.  But

21    here's what I'm going do.  I feel compelled -- I'm going

22    to grant the motion to dismiss in part and deny it in

23    part.  And I'm not dismissing the case.  But I do find

24    that the plaintiff has not proved that service of process

25    was made in accordance with federal or state law, that a

18

1    person defined in Mass General Law, chapter 223, sections

2    37 and 38, was served.  The present record is insufficient

3    for me to find that Mr. Roy, who personally accepted

4    service, was an agent for the company for this purpose,

5    either officially or within the meaning of the statute, or

6    especially designated.

7            The finding that he was not -- that the company

8    has not been properly served leaves me with two options.

9    I can quash the service of process or dismiss the action,

10   as discussed in Ubinhow (sic) versus Lowe, 969 F 2nd 25 at

11   30, and Wright & Miller, section 1354, at page 348.

12           In this case, I think it's most appropriate to

13   quash the service of process and to give the defendant --

14   sorry, plaintiff time to serve again.

15           Then I do think there's a competitive question as

Page 15

091505c.txt

16    to whether there's personal jurisdiction.  And the

17    plaintiff has made the required colorable case for the

18    existence of personal jurisdiction to be entitled to

19    jurisdictional discovery.  And I have in mind, for

20    example, particularly, not just the case cited, but the

21    First Circuit's discussion in United States versus Swiss

22    American Bank Limited, 274 F 3rd 610 at 625.

23         The Pike case decided by Judge Lindsay provides

24    some support for the contention that there may be personal

25    jurisdiction here.

19

1         However, it's important for the parties to

2    understand that I have a different understanding of what

3    has to be established for the purposes of personal

4    jurisdiction than, I think, Judge Lindsay does.  And let

5    me tell you what that is because you're going to have to

6    do your discovery and, ultimately, update your briefing

7    with my understanding in mind.

8         It is my understanding that in Massachusetts the

9    Long Arm Statute, Mass General Law, chapter 223A, section

10    3, asserts jurisdiction over the person to the

11    constitutional limit only when some basis for jurisdiction

12    enumerated in the statute has been established, as the SJC

13    said in Morrill versus Tong, 390 Mass 120 at 129.

14         Although presented with jurisdictional facts

15    sufficient to survive due process inquiry, a judge would

16    be required to deadline to exercise jurisdiction if the

17    plaintiff was unable to satisfy at least one of the

18    statutory prerequisites, which is a quote from Morrill.

19         Tatro, 416 Mass 763 at 767, is the same.

20    Jurisdiction is conferred only when some basis for

Page 16

091505c.txt

21    jurisdiction enumerated in Mass General Law, chapter 223A,

22    section 3, has been established.

23        Now, I know, I think it's the Dayard case, the

24    First Circuit said the opposite.  You can skip right to

25    the due process inquiry.  But that's different than what

20

1    it said in Noack at page 712 and earlier cases.  And since

2    this is supposed to be governed by state law and since the

3    First Circuit has said different things on the issue, I

4    think as a practical matter what the plaintiff will have

5    to prove to establish jurisdiction is that this case arose

6    out of a transaction of business in Massachusetts.  And it

7    also has to satisfy the requirements of due process.

8        But my understanding is, basically, if you can

9    establish that this case arises out of a transaction of

10   business in Massachusetts, that will also essentially

11   automatically satisfy the requirements of due process.

12   But you don't get to the issue of sort of general

13   jurisdiction unless you first satisfy one of the prongs of

14   the Massachusetts Long Arm Statute.

15       So there are two things that are going to need to

16   be done.  I think the plaintiff is -- and I'm going to

17   recess and see you back in the lobby, and we'll set up a

18   schedule that is realistic for this.  The plaintiff is

19   going to need to think about whether in the context of my

20   understanding of the law it's worth trying to establish

21   jurisdiction in Massachusetts and, indeed, whether all of

22   those things you want discovery on are necessary.  And

23   then, if it is, when service of process is accomplished or

24   service is accepted by agreement, you'll have to do the

Page 17

091505c.txt
25      discovery and then do the briefing sort of addressing my

21

1      state of mind.

2              When I read Smith and Davis, I was somewhat

3      surprised.  I thought if somebody was hired in

4      Massachusetts, the case would arise out of the transaction

5      of business in Massachusetts.  Judge McNaught and Judge

6      Mazone didn't think so.  And maybe when I study it more,

7      I'll agree.

8              On the other hand, Judge Lindsay seems to have

9      thought so, and I haven't read Pike closely enough to see

10      whether he was influenced at all by his different

11      understanding of what the First Circuit and the SJC

12      required.  Maybe not.

13              So, with that, why don't we adjourn to the lobby

14      so I can see as a practical matter what your availability

15      is, because I'd like to set up some reliable schedule for

16      (A) determining whether this case could somehow be

17      resolved by agreement or where it's going to proceed and

18      be resolved by agreement and, if not, I'm going to keep it

19      on my radar screen.

20              MS. LATTI:    Okay, your Honor.

21              THE COURT:    Court is in recess.

22

23

24

25

22

CERTIFICATE

Page 18

091505c.txt

I, JUDITH A. TWOMEY, Registered Professional
Reporter, do hereby certify that the foregoing transcript,
pages 1 through 21 inclusive, was taken by me
stenographically and thereafter by me reduced to
transcription and is a true record of the proceedings in
the above-entitled matter to the best of my ability.

                              JUDITH A. TWOMEY
                              Registered Professional Reporter

# EXHIBIT  B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICK LONGLEY,                        :        CIVIL ACTION NO.
      Plaintiff                       :        04-12548 (MLW)

V.                                      :

BUCHANAN MARINE LP,                     :
      Defendant                       :        JANUARY 7, 2005

## <u>AFFIDAVIT OF JULES B. LLOYD</u>

I, JULES B. LLOYD, being duly sworn, hereby depose and say:

1.     I am over the age of 18 and believe in the obligations of an oath.

2.     I am currently and at all relevant times have been the Safety Director of defendant, Buchanan Marine, LP, and as such I have personal knowledge of the facts stated herein and I am familiar with the subject transaction and the disclosures which were given to the plaintiffs.

3.     Buchanan Marine LP is a limited partnership organized under the laws of the State of Delaware.  The corporate office is located in New Haven, Connecticut and its principal place of business is in New York.

4.     Buchanan Marine did not transact, solicit or engage in any business within the Commonwealth of Massachusetts in 2004, including on the date of the alleged incident, July 25, 2004.

5.     The tug, *Dory Barker*, was not owned by Buchanan Marine on July 25, 2004.  The *B 18* barge was not owned by Buchanan Marine on July 25, 2004.

6.     All of the crew members of the *Dory Barker*, except the plaintiff, are residents of New York.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

7.    At the time of the alleged incident, the barge, *B 18,* and the tug *Dory Barker*, were in navigable waters of the State of New York.

8.    Plaintiff, Patrick Longley, signed aboard the tug, *Dory Barker*, in Port Washington, New York a few days prior to July 25, 2004.

9.    The Complaint was served on December 21, 2004 by personal delivery to Jules Lloyd, the Safety Director of Buchanan Marine, in Connecticut.

10.    Service of process was not made on an officer, managing agent, general agent or any other agent appointed by Buchanan Marine to accept service of process. Service of process was not made upon the president, treasurer, clerk, resident agent, cashier, secretary, business agent or member of the corporation.

11.    Buchanan Marine does not own or possess any real or personal property in the Commonwealth of Massachusetts.

Jules B. Lloyd
Buchanan Marine LP

STATE OF CONNECTICUT      )
                          ) ss.
COUNTY OF NEW HAVEN       )

Subscribed and sworn to before me this __7th__ day of January 2005.

Kevin J. Greene
Commissioner of the Superior Court

633265_1.DOC

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No  26105

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PATRICK LONGLEY, | : | CIVIL ACTION NO. 04-12548 (MLW) |
| Plaintiff | : | |
| V. | : | |
| BUCHANAN MARINE LP, | : | |
| Defendant | : | JANUARY 11, 2006 |

## AFFIDAVIT OF RONALD COMBS

The undersigned, Ronald Combs, hereby deposes and says:

1.      I am over the age of eighteen, believe in the obligation of an oath, am employed as the Controller by the defendant, and make this affidavit from personal knowledge and a review of Buchanan Marine records;

2.      Buchanan Marine has offices and conducts marine operations in Connecticut, New York, and Virginia. Buchanan Marine does not have an office and does not conduct marine operations in the Commonwealth of Massachusetts;

3.      Buchanan Marine employs over two hundred and ten (210) persons. Since 2003, Buchanan Marine has employed three persons, other than the plaintiff himself, who resided in the Commonwealth of Massachusetts. In addition, Buchanan Marine has employed and currently employs persons from the following twelve (12) states:

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

12451 0015
HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

Rhode Island, Connecticut, New York, Pennsylvania, New Jersey, Virginia, North

Carolina, Maine, Missouri, Alabama, Texas and Florida;

    4.    Buchanan Marine has not employed an officer, agent, or employee in the

Commonwealth of Massachusetts;

    5.    Buchanan Marine has not provided any goods or services to any entities

in the Commonwealth of Massachusetts;

    6.    Buchanan Marine has not filed any corporate tax returns in the

Commonwealth of Massachusetts;

    7.    Buchanan Marine derives zero dollars from business in the

Commonwealth of Massachusetts because it does not transact business there;

    8.    Buchanan Marine has not had its vessels in the waters of the

Commonwealth of Massachusetts;

    9.    Buchanan Marine neither owns nor rents any real or personal property in

the Commonwealth of Massachusetts;

    10.    Buchanan Marine has not maintained any bank account within the

Commonwealth of Massachusetts;

    11.    Buchanan Marine has neither applied for nor obtained a grant for tax

exemptions from the Commonwealth of Massachusetts;

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

- 2 -


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

12.    Buchanan Marine has not solicited business in the Commonwealth of Massachusetts, nor have Massachusetts entities solicited and/or used Buchanan's marine towing services; and

13.    Buchanan Marine does not solicit Massachusetts residents for employment.


_Ronald Combs_
Ronald Combs


Subscribed and Sworn to before me
this 11th day of January 2006


Carl R. Ficks, Jr.
Commissioner of the Superior Court


775285_1 DOC

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No  26105

# EXHIBIT  D

UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

```
                                    )
PATRICK LONGLEY,                    )
        Plaintiff                   )
                                    )        Civil Action
V.                                  )
                                    )        No. 04-12548-MLW
BUCHANAN MARINE LP,                 )
        Defendant                   )
                                    )
```

## DEFENDANT'S OBJECTIONS AND RESPONSES
## TO PLAINTIFF'S INTERROGATORIES

The defendant, Buchanan Marine, LP, hereby objects and/or responds to the plaintiff's

Interrogatories dated October 3, 2005, as follows:

1.      State the name, address, and position of the individual answering these interrogatories, and include in your answer whether the information in these interrogatories is based on personal knowledge or if upon a review of documents, if documents, please list each document, summarize its contents, and where the document could be found and who has possession of it.

**RESPONSE:  Ronald Combs, Controller, Buchanan Marine LP, 39 Ferry Street, New Haven, CT; responses are based on personal knowledge and a review of an AP Vendor List and Employee List.**

2.      Indicate whether from 2003 to present, the Defendant has ever had any officer(s), agent(s), individuals and/or employee(s) domiciled and/or reside [sic] within the Commonwealth of Massachusetts, if yes, please indicate the name, address of each officer(s), agent(s), or employee(s) and the specific time and dates in which said agent(s), officer(s) or employee(s) were within the Commonwealth, the reason why the officer(s), agent(s) or employee(e) were within Massachusetts, and indicate the percentage of officer(s), agent(s), and/or employee(s) that reside and/or are domiciled within the Commonwealth of Massachusetts.

**OBJECTION: The defendant objects to the portion of the interrogatory calling for "specific time and dates" when officers or employees were physically present in the Commonwealth, as well as the specific reason why that person or those persons were in the Commonwealth. This interrogatory is overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the objection, the defendant states that the following employee(s) reside or resided in the Commonwealth in the time requested, aside from Patrick Longley (whose address is known to him):**

1

1) **Christopher Birdsey**
   **23 Hilliards Hayway**
   **West Barnstable, MA 02668**

2) **Joaquim Silva**
   **10 Mt. Pleasant Street**
   **Westport, MA 02790**

3) **Pedro Silva**
   **31 Salisbury St.**
   **Fall River, MA 02724**

3.     Indicate whether from 2003 to present, the Defendant has ever had any officer(s), agent(s), or employee(s) employed in the Commonwealth of Massachusetts, if yes, please indicate the name, address of each officer(s), agent(s), or employee(s) and the specific time and dates in which said agent(s), officer(s) or employee(s) were within the Commonwealth, and the reason why the officer(s), agent(s) or employee(e) were within Massachusetts.

   **RESPONSE: No**

4.     From the year 2003 to present, state the names and addresses of all individuals, employees, sole proprietorships, partnerships, corporations, and/or any other entity in the Commonwealth of Massachusetts and/or the Commonwealth of Massachusetts, that the Defendant had written or oral communication with, including, but not limited to the mailing of documents, material, airline tickets, faxing of material and/or documents and/or the placement of telephone calls to.

   **OBJECTION: The defendant objects to this interrogatory as overbroad and burdensome. The defendant cannot initiate any type of competent search to confirm or deny the existence or evidence of conversations or other communications with persons in the Commonwealth. Without waiving the objection, see Schedule A.**

5.     From the year 2003 to present, state the names and addresses of all individuals, sole proprietorships, partnerships, corporations, and/or any other entity in the Commonwealth of Massachusetts and/or the Commonwealth of Massachusetts, that Defendant had oral or written contracts with, including but not limited to contracts for chartering of vessels and contracts of insurance.

   **OBJECTION: The defendant objects to this interrogatory as overbroad and burdensome. Without waiving the objection, see Schedule A. Further, the defendant's vessels are held in trust by A.P.Franz, Jr. as Trustee. Mr. Franz is currently a resident of Orleans, MA, but resided in Connecticut when the trust agreements were executed in 1993. Each trust agreement notes in paragraph 9 that the "trust has been accepted by the Trustee in the State of Connecticut, and shall be administered in accordance with the laws of that State."**

6.     From the year 2003 to present, state the names, addresses and exact date of all individuals, sole proprietorships, partnerships, corporations, and/or any other entity in the Commonwealth of

2

Massachusetts and/or the Commonwealth of Massachusetts who provided Defendant with any services and/or goods.

**OBJECTION:  The defendant objects to this request as overbroad and burdensome. Without waiving the objection, see Schedule A.**

7.    From the year 2003 to present, state the names and addresses of all individuals, sole proprietorships, partnerships, or corporations in the Commonwealth of Massachusetts who the defendant provided any services for and/or goods to and/or for.

**RESPONSE:  None**

8.    Indicate whether from 2003 to present, any representative, agent or employee of the Defendant, acting within the scope of his/her employment has ever solicited business in the Commonwealth of Massachusetts on behalf of the Defendant, include in your answer the name of the employee, date of visit to Massachusetts, the name and address of the party contacted and the reasons for such solicitation.

**RESPONSE:  No**

9.    Indicate whether from 2003 to present the Defendant ever had to file corporate tax returns in the Commonwealth of Massachusetts, for each year include in your answer who prepared the taxes, who filed the taxes, and where copies of the documents are located.

**RESPONSE:  No**

10.    Indicate for each year from 2003 to present, the percentage of business that occurred in the Commonwealth of Massachusetts that makes up the Defendant's yearly profit.

**RESPONSE:  Zero**

11.    Identify all Defendant's vessels, including but not limited to vessel's that the Defendant owned, loaned, operated, leased, and/or chartered, that were in the Commonwealth of Massachusetts and/or its territorial waters from 2003 to present, include in your answer the date, the entity loaning, operating, leasing and/or chartering the vessels and the reason why the vessel was in Massachusetts.

**RESPONSE:  None**

12.    State when and where the Defendant was incorporated, the name and address of each director, and/or officer of the Defendant corporation from 2003 until present, and where the meetings of the board of directors was held and the person(s) present at the meetings.

**RESPONSE:  The defendant is not incorporated.**

13.    Indicate whether from 2003 to present, the Defendant has ever had any offices within the Commonwealth of Massachusetts, if yes, include in your answer the address of the office, the business done at the office, and the dates of operation of the office.

3

**RESPONSE**: No

14.    Indicate whether from 2003 to present, the Defendant has ever had any officer(s), agent(s), or employee(s) within the Commonwealth of Massachusetts, if yes, please indicate the name, address of each officer, agent, or employee and the specific time and dates in which said agent, officer or employee was in the Commonwealth, and the reason why the officer, agent or employee was in Massachusetts.

**OBJECTION**: **See objection to interrogatory 2.**

15.    From the year 2003 to present, state the names and addresses of all individuals, sole proprietorships, partnerships, corporations, or any other entity who have chartered the DORY BARKER, including in your answer the year the vessel was operated and/or chartered and ports of call visited.

**RESPONSE**: **Buchanan Marine LP bare boat chartered the Dory Barker and operated it in 2003, 2004 and 2005, calling on various and sundry ports in New York and Connecticut.**

16.    Indicate whether from 2003 to present, the Defendant has ever operated or done any business within the Commonwealth of Massachusetts, if yes, please indicate the specific location, the kind of business done, the name, address of each officer, agent, or employee and the specific time and dates in which said business was done.

**RESPONSE**: **Other than purchasing goods from vendors who have Massachusetts mailing addresses, no.**

17.    Give a list of all assets either real estate, personal, and/or chattel owned by the Defendant in the Commonwealth of Massachusetts since 2003 to present.

**RESPONSE**: **None**

18.    From the year 2003 to present, state the names, addresses and exact date of all individuals, sole proprietorships, partnerships, corporations and/or any other entity in the Commonwealth of Massachusetts and/or the Commonwealth of Massachusetts, who the Defendant has purchased its goods, machinery, equipment, supplies, materials, and/or property, real or personal, including in your answer the item or thing purchased.

**OBJECTION**: **The defendant objects to this interrogatory, to the extent it asks for dates and an itemization of "the item or thing purchased," as overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the objection, see Schedule A.**

19.    Indicate whether the Defendant, from 2003 to present, has ever rented any real or personal property from some one or some entity in the Commonwealth of Massachusetts, if yes, include the address of the property, address of the owner of the property and the dates of the rental.

**RESPONSE: No**

20.    Indicate whether from 2003 to present the Defendant as such or with any other name maintained any bank account within the Commonwealth of Massachusetts, if yes, indicate at what bank the account was at, the account number, and the date the account was established and the date the account was closed.

**RESPONSE: No**

21.    Indicate whether from 2003 to present, the Defendant has ever applied and obtained a grant for tax exemption from the Commonwealth of Massachusetts and if yes, please state the date the petition was filed.

**RESPONSE: No**

22.    Indicate whether the Defendant, from 2003 to present, has ever advertised, including but not limited to advertisements in a magazine, directory, newspaper, radio, television, including in your answer the date of the advertisement, in or what source the advertisement was placed.

**RESPONSE: The defendant placed an advertisement for the sale of a commercial work barge in the October, 2005 issue (Volume 48, No. 15) of Boats & Harbors, a trade paper based in Crossville, TN.**

23.    Indicate whether from 2003 to present the Defendant has ever advertised for job openings in the Commonwealth of Massachusetts, including in your answer the date of the advertisement, in what source the advertisement was placed.

**RESPONSE: I am not aware of any such ads.**

24.    From 2003 to present, identify each time that an employee(s) paycheck was deposited in a bank in Massachusetts via direct deposit, including in your answer date of occurrence, name of bank, and employee name and address.

**OBJECTION: The defendant objects to this interrogatory to the extent it calls for the disclosure of a particular employee's name and address that may have direct deposit. This is irrelevant to the jurisdictional issues raised by the defense. The defendant further objects to providing the "date of occurrence" for each direct deposit as overbroad and not likely to lead to the discovery of admissible evidence. Without waiving the objection, since June, 2004, one employee's paycheck has been deposited in a Fleet Bank branch in the Commonwealth via direct deposit.**

RESPECTFULLY SUBMITTED FOR THE
DEFENDANT, BUCHANAN MARINE LP,
BY ITS ATTORNEY

By _____
    Kevin M. Roche, BBO 551190
    HALLORAN & SAGE LLP
    One Goodwin Square
    225 Asylum Street
    Hartford, CT 06103
    (860) 522-6103
    Email: roche@halloran-sage.com

Dated: November _14_, 2005

## CERTIFICATION

This is to certify that on this 14th day of November 2005, a copy of the foregoing was mailed, postage prepaid, to:

Carolyn M. Latti, Esq.
David F. Anderson
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109

_____
Kevin M. Roche

748990_1 DOC

6

## DEFENDANT'S VERIFICATION

I, Ronald Combs, Controller, Buchanan Marine, L.P., being first duly sworn, depose and say that I have read the foregoing answers; that said answers were prepared with the assistance and advice of counsel; that the answers set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, and thus far discovered in the course of the preparation of these answers; that I consequently reserve the right to make any change in the answer if it appears at any time that omissions or errors have been made therein or that more accurate information is available; that subject to the limitation set forth herein, said answers are true and accurate to the best of my knowledge, information and belief.

Ronald Combs

Subscribed and sworn to before me this _9th_ day of November 2005.

~~Notary Public~~    CARL R. FIELDS, JR

Commissioner of the Superior Court

7

## SCHEDULE A

### 2003 - 2005 MASSACHUSETTS VENDOR LIST

A.P. Franz, Jr.
P.O. Box 2102
Orleans, MA 02653-0000

Al Marine Adjusters, Inc.
99 High Street, 29th Floor
Boston, MA 02110-2320

Arch Wireless
P.O. Box 4062
Woburn, MA 01888-4062

BJ's Wholesale Club
P.O. Box 9608
Natick, MA 01760-9608

Braman Chemical Enterprises, Inc.
P.O. Box 368
Agawam, MA 01001-0368

Cam Equipment Corp.
157 Bedford Street
Burlington, MA 01803

Certified Boom Repair
P.O. Box 839
77 Main Street
Northboro, MA 01532

Chiswick
33 Union Avenue
Sudbury, MA 01776-2267

Christopher Birdsey
23 Hillard Hayway
West Barnstable, MA 02668

Dawson-MacDonald Co., Inc.
845 Woburn Street
Wilmington, MA 01887-3493

H&H Propeller
Zero Essex Street
Salem, MA 01970

Handy House, Inc.
P.O. Box 9131
Foxboro, MA 02035-9131

Hyster New England
P.O. Box 845927
Boston, MA 02284-5927

Independent Pipe Supply Corp.
P.O. Box 843024
Boston, MA 02284-3024

Internal Revenue Service
Andover, MA

International WorkBoat Show
P.O. Box 3126
Boston, MA 02241-3126

Jason Deraleau
24 Taylor Street, Apt. 106
Springfield, MA 01103

Lynn Ladder
P.O. Box 346
W. Lynn, MA 01905

Mid City Steel Corp.
546 State Road
Westport, MA 02790-0698

Penny Pockets
1225 G.A.R. Highway (Route 6)
Swansea, MA 02777

Total Welding Supply
P.O. Box 249
East Freetown, MA 02717

United Illuminating
P.O. Box 9230
Chelsea, MA 02150-9230

Wall Street Journal
P.O. Box 7030
Chicopee, MA 01021-7030

Woods CRW Corp.
183 SW Cutoff
Worcester, MA 01604

# EXHIBIT  E

Patrick M. Longley
287 Purchase Street
Swansea, MA 02777

September 23, 2003

Buchanan Marine LP
PO Box 1039
Port Washington, NY 11050

Attn:   Human Resources

Re:    Application for Employment

To Whom It May Concern:

Enclosed are the originals of my Application for Employment and supporting documentation, which was faxed to you on 9/16/03.

I would greatly appreciate the opportunity to speak with you regarding my qualifications and experience. I can be reached at the above address or by phone. My home number is 508-669-6855 and my cell phone number is 508-496-2334.

Thank you for your time and consideration.

Very truly yours,

Patrick M. Longley

Patrick M. Longley